UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GARY WILLIAMS, *et al.*,

    Plaintiffs,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

    Defendant.

Case No. 2:09-CV-00675-KJD-VCF

**ORDER**

    Before the Court is the Motion for Summary Judgment (#51) of Defendant American Family Insurance Company. Plaintiffs Gary Williams and Nidenia Williams filed an Opposition (#51) which also contained a Countermotion for Summary Judgment (#61).[1] Defendant filed a reply (#69) combined with an opposition to the Countermotion (#71). Plaintiffs filed a supplemental opposition to the Motion for Summary Judgment (#72) and a reply to the Countermotion (#70).

---

[1] District of Nevada Special Order 109 requires that "[a] separate document must be filed for each type of document or purpose." The parties must comply with this rule in all future filings.

Also before the Court is Defendant's Motion to Reconsider Order Granting *Pro Hac Vice* (#75). Plaintiffs filed an opposition (#77) and Defendant filed a reply (#78).

I. Introduction

Defendant moves for summary judgment on Plaintiffs' claims for bad faith, violations of NRS 686A.310 (the "Unfair Claims Practices Act" or "UCPA"), punitive damages, lost wages, and emotional damages.

Plaintiffs were involved in an automobile accident on June 16, 2006. They were not at fault or comparatively negligent. Plaintiffs had a underinsured motorist ("UIM") policy issued by Defendant with limits of $100,000 per person and $300,000 per incident (the "Policy"). Plaintiffs also were covered by Defendant for medical payments. Four months after the accident, on October 25, 2006, Plaintiffs notified Defendant of their claim under the Policy. Over the course of the next year, Plaintiffs received medical payment coverage from Defendant. Plaintiffs had not yet settled with the tortfeasor's insurance company. In 2007, Defendant learned that Plaintiffs had discontinued treatment with their chiropractor. Plaintiff Gary Williams indicated to Defendant's adjustor that he intended to visit another doctor, Dr. Ziegler, and indicated that Ms. Williams might wish to visit another doctor as well.

Defendant considered ordering an independent medical evaluation for Mr. Williams and set a UIM reserve and requested recorded statements from Plaintiffs. Defendant reconsidered the need for an independent evaluation because Mr. Williams was no longer under chiropractic care and had not confirmed that he was under follow-up care. Plaintiffs did not make any demands under the UIM. In August 2007, Mr. Williams indicated that he had visited Dr. Ziegler once and that Ms. Williams was unsure if she would seek further treatment. Defendant sought records from Dr. Ziegler. The records it obtained were incomplete. Later, at Dr. Ziegler's deposition, Dr. Ziegler produced a handwritten note indicating that Mr. Williams had suffered pain in his right hip since college. Mr. Williams apparently did not even mention the car accident to Dr. Ziegler.

Defendant spoke with Mr. Williams in November, 2007 and learned that he had not returned to see Dr. Ziegler because his health insurance would not pay for the visit. Mr. William's records were sent to Defendant's Medical Services Department, which reviews the medical records of insured. Nurse Nancy Chavez concluded that the adjustor should seek medical records which were missing and a five-year medical history of Mr. Williams. Defendant sought this information from Plaintiffs and in January, 2008 was informed that neither of the Plaintiffs was being treated. On June 16, 2008, the tortfeasor in the accident settled with Plaintiffs for $6,500 each.

On September 25, 2008, Plaintiffs notified Defendant that they planned to retain an attorney. On October 29, 2008, Plaintiffs made UIM demands. On November 26, 2008, Defendant completed an initial review of the demand and requested additional information including legible medical records from the chiropractor, complete records from another treating physician, and employment records listing job duties. Plaintiffs' attorney responded by stating that Defendant had releases and so could obtain any medical records it wished and that he would provide the "employment of my clients and their general duties." However, Plaintiffs' counsel only provided the job titles of Plaintiffs. Defendant specified that its request for medical records could not be addressed through the releases because some of the records were illegible and some of the bills for Ms. Williams appeared to be unrelated to the accident. Plaintiffs' counsel did not provide the requested information. This suit was filed on January 28, 2009.

When Plaintiffs made their demands, Plaintiffs indicated that Mr. Williams had $11,900 in claimed medical bills and Ms. Williams had $6,585 in claimed medical bills. Mr. Williams' amount did not include the visits he made to Dr. Ziegler prior to retaining an attorney. In addition to the settlement with the tortfeasor, Plaintiffs have received $5,000 in med pay for Mr. Williams and $4,122 for Ms. Williams.

Upon reviewing the medical records, it was discovered that some of Ms. Williams medical bills were for a visit to a Dr. Buckwalter and were related to treatment of hypertension, not to injuries from the accident. Ms. Williams received sporadic chiropractic treatment from June 2006 to August

10, 2007 and a single treatment in January 2009. At the time of the motion, she had no pending treatments. Defendant determined that the medical pay coverage and the settlement with the tortfeasor had adequately compensated Ms. Williams and denied her coverage under the policy. Defendant had not denied Mr. Williams' claim when the suit was filed.

II. Motion to Reconsider

As an initial matter, the Court addresses Defendant's Motion to Reconsider (#75). Plaintiffs designated Pete Ligeros as a bad faith rebuttal expert. Mr. Ligeros prepared a report which was sent to Defendant on February 16, 2010. Defendant attempted to depose Mr. Ligeros and obtain documents related to his expert report. Defendant was unsuccessful and filed a Motion to Compel Mr. Ligeros' deposition (#48). On April 19, 2010, Magistrate Judge Leavitt issued an Order (#52) that Mr. Ligeros' deposition take place within seven days. The deposition was noticed and rescheduled seven times. Finally Judge Leavitt issued an Order (#67) requiring that the Deposition take place by September 30, 2011. On September 30, 2011, the date of the deadline, Plaintiffs withdrew Mr. Ligeros as an expert in this case. On January 19, 2012 Mr. Ligeros petitioned the Court for admission *pro hac vice*. Mr. Ligeros did not indicate that he had previously been an expert in this case or that he had prepared an expert report. Further, he did not notify the Court that he had evaded his deposition on at least seven occasions, that Judge Leavitt had twice ordered him to appear for his deposition, and that he withdrew as an expert the day of the deadline rather than be deposed. On January 24, 2012 the Court, following the usual practice in this District, granted the Petition without waiting for a response from Defendant (#74).

Pursuant to Local Rule IA 10-2 the Court has discretion to grant or revoke the authority of any person permitted to appear *pro hac vice*. Mr. Ligeros' prior relationship to this case, while not a clear-cut violation of the Rule's verification requirements, should have been disclosed. Had the Court been aware of Mr. Ligeros' previous role as a rebuttal expert in this matter and that Plaintiffs were subject to an order to compel based on his activities, it would have not granted the *pro hac vice* petition. There is at least some potential that Mr. Ligeros will be a witness in this case based on his

previous activities. The Court has concerns, given Mr. Ligeros' history in this case, about the ability to manage his participation in the trial. Accordingly, the Motion for Reconsideration is granted. The Order Granting the Verified Petition to Practice *Pro Hac Vice* for Attorney Pete Ligeros (#74) is revoked.

III. Defendant's Motion for Summary Judgment

    A. Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See, Fed. R. Civ. P. 56(a); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Id.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(a). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

    B. Bad Faith

An insurer acts in bad faith when it refuses "'without proper cause' to compensate the insured for a loss covered by the policy." Pemberton v. Farmers Ins. Exch., 858 P.2d 380, 382 (Nev.1993) (quoting United States Fid. & Guar. Co. v. Peterson, 540 P.2d 1070, 1071 (Nev.1975)). Such conduct is a breach of the covenant of good faith and fair dealing. Id. In order to establish a prima facie case of bad faith, a plaintiff must establish that "the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." Powers v. United Servs. Auto. Ass'n, 962 P.2d 596, 603 (Nev.1998). When there is a genuine dispute regarding an insurer's legal obligations,

5

the district court can determine if the insurer's actions were reasonable. Allstate Ins. Co. v. Miller, 125 Nev. 300, 317 (Nev.2009). Insurers are not liable for bad faith for "being incorrect about policy coverage as long as the insurer had a reasonable basis to take the position that it did." Pioneer Chlor Alkali Co., Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 863 F.Supp. 1237, 1242 (D.Nev.1994).

### 1. Ms. Williams' Bad Faith Claim

Defendant denied Ms. Williams' claim under the UIM Policy. To support its assertion that it acted reasonably, Defendant has submitted the testimony of expert Steve Plitt. Ms. Williams experienced a soft tissue injury and received sporadic chiropractic treatment from June 2006 to August 10, 2007 and a single treatment in January 2009. At the time of the Motion, she had no pending treatments and there is no evidence of wage loss. Upon reviewing Ms. Williams' medical records, Mr. Plitt found that nearly $2,000 of the $6,585 of medical bills claimed by Ms. Williams were related to treatment of hypertension and preparation for a "tummy tuck" surgery rather than injuries from the accident. Plaintiffs do not dispute this fact. Mr. Plitt concluded that Defendant had a reasonable basis for its valuation of Ms. Williams' claim when Defendant determined that the $10,622 from medical pay coverage and settlement with the tortfeasor had adequately compensated Ms. Williams for her injuries and for any additional suffering.

Plaintiffs' opposition does not explain why Ms. Williams is claiming medical bills related to treatment for hypertension and cosmetic surgery or refute Mr. Plitt's determination that the insurer acted reasonably. Plaintiffs do not challenge Mr. Plitt's qualifications or provide a rebuttal expert to show that Defendant acted unreasonably or that it acted with knowledge that it had no reasonable basis to deny coverage or with reckless disregard of that knowledge. Instead, Plaintiffs' opposition argues – contrary to the language of the policy – that Defendant is not entitled to an offset for the med payments.  Plaintiffs also argue that Defendant's claim that it had a reasonable basis for

determining that Ms. Williams was fully compensated is "ridiculous."[2] Plaintiffs' supplemental opposition does not substantively address the issues as they relate to Ms. Williams. Defendant has offered evidence to show that its denial of Ms. Williams' claim under the Policy had a reasonable basis. Plaintiffs have failed to show a dispute of fact about whether Defendant lacked a reasonable basis for denying Ms. Williams' claim or acted against or with reckless disregard of that knowledge. Accordingly, summary judgment is granted in favor of the Defendant on this claim.

### 2. Mr. Williams' Bad Faith Claim

Plaintiffs concede that Defendant has never denied Mr. Williams' claim. (Opp. at 46.) "[B]ad faith exists where an insurer **denies** a claim without any reasonable basis and with knowledge that no reasonable basis exists to deny the claim." Pioneer, 863 F.Supp. at 1243 (emphasis added). Plaintiffs provide no authority showing that they can recover for bad faith for handling of the claim where suit was filed prior to denial of the claim. Accordingly, Plaintiffs cannot recover for bad faith for Mr. Williams' claim because it has never been denied.[3]

### C. Violation of NRS 686A.310

NRS 686A.310 designates certain insurance company activities to be unfair practices and by implication permits a private right of action by an insured against an insurer for violation of the statute. See Hart v. Prudential Property and Casualty Ins. Co., 848 F.Supp. 900, 903 (D.Nev.1994). The protections of NRS 686A.310 are more broad than the tort of bad faith and extend to the

---

[2] More than once in their brief Plaintiffs use the word "ridiculous" to describe meritorious arguments. This is disrespectful to opposing counsel and to the Court. Additionally, Plaintiffs ignored Local Rule 7-4 which limits their opposition to 30 pages. Plaintiffs filed a 56-page opposition without leave of the Court. Inexplicably, the first 36 pages are filed as the primary document while the remaining 20 pages are filed as an attachment titled "Supplement part 2 of brief." Plaintiffs have copied and pasted into the body of the brief 34 pages of disjointed depositions excerpts which have little context or clear relation to Plaintiffs' arguments and do not appear to have been selected with much care. Page 45 is included twice – once sideways. The Court will not tolerate further disregard of the Rules and strongly encourages the parties to be courteous and follow commonly-known best practices in preparing their papers.

[3] Even if Defendant had denied the claim around the time Plaintiffs filed suit, it could have done so in good faith. Mr. Williams' explanations to his doctors of the onset and origin of his hip pain were inconsistent. It appears beyond doubt that Mr. Williams had a pre-existing hip condition which may have been the source of his problems. Defendant's expert is unopposed in his conclusion that the handling of the claim was reasonable and that there was no information which was known or recklessly disregarded that would render a denial of the claim unreasonable.

processing of the claim. <u>Pioneer</u>, 863 F.Supp. at 1243. In the Complaint, Plaintiffs allege that Defendant failed to properly respond to Plaintiffs' demands, failed to adopt reasonable policies to address and process the claim, and failed to promptly and adequately investigate, respond to, and/or compensate Plaintiffs pursuant to the Policy in violation of the NRS 686A.310.

Plaintiffs' claims with the original tortfeasor were not settled until June 16, 2008. Plaintiffs first made a demand under the UIM policy on October 29, 2008.[4] Defendant responded on November 26, 2008, indicating that it was investigating the claim and requesting assistance in obtaining certain information. The parties continued to correspond as Defendant sought information. Plaintiffs believed that Defendant had or could obtain whatever information it needed and filed this action in state court on January 28, 2009, thirteen weeks after making the demand.

In <u>Zurich American Ins. Co. v. Coeur Rochester, Inc.</u>, where there was a delay of ten weeks, Judge Reed granted summary judgment on a Unfair Claims Practices Act claim, holding that "[t]here is no authority in support of the notion that such a short delay could support a claim under Nev.Rev.Stat. § 686A.310." 720 F.Supp.2d 1223 (D.Nev. 2010). Defendant has submitted an expert report from Steve Plitt opining that the policies and practices in place and the processing of this claim did not violate NRS 686A.310. Plaintiffs do not provide legal authority showing that a thirteen week period of investigation constitutes a violation of NRS 686A.310 or that Defendant's actions in this case constituted an improper response. Plaintiffs do not point out deficiencies in adopting policies and procedures or provide an expert rebuttal indicating how Defendant's response and investigation were inadequate. Instead, Plaintiffs conclusorily state that Defendant could have handled the claim differently. This is not enough to raise a question of fact about violation of NRS 686A.310 where Defendant was in the process of investigating the claim. Accordingly, summary judgment is granted.

---

[4] Although the claim file indicates that Defendant contemplated a UIM claim prior to October 29, 2008, Plaintiffs concede that this was the first date that Plaintiffs made a written demand under the UIM policy and do not claim or offer evidence showing that they made a previous oral demand.

### D. Lost Wages and Emotional Damages

Defendant moved for summary judgment on the claims for lost wages and emotional damages. Defendant argues that there is no evidence of any wage loss and provided letters from each Plaintiffs' employer showing attendance at work on the day after accident. Defendant also argued that there is no evidence of emotional damages and pointed to deposition testimony indicating that Plaintiffs had not suffered any emotional damage. Plaintiffs did not address these arguments in their opposition or supplemental opposition. Because there is no evidence of lost wages and emotional damages, and because Plaintiffs have not provided points and authorities in opposition to the Motion for Summary Judgment, summary judgment is granted in favor of Defendant on these claims. (See Local Rule 7-2.)

### E. Punitive Damages

Since all of Plaintiffs' non-contractual claims have been dismissed, Plaintiffs are not entitled to punitive damages.

## IV. Countermotion for Summary Judgment

### A. Liability for Hip Injury

Plaintiffs have moved for summary judgment on Defendant's liability for the problems associated with Mr. Williams' right hip. There is a dispute of fact about the cause of Mr. Williams' injuries. Defendant argues that it had a reasonable belief that Mr. Williams' injury could have been caused by a pre-existing condition, rather than the result of the car accident. Specifically, Defendant points to the fact that Mr. Williams did not mention the car accident to Dr. Ziegler, told Dr. Ziegler that he had experienced hip pain since college, and listed football and rugby as past trauma. He also told Dr. Ziegler that other doctors had told him that he may have issues with his iliopsoas hip muscles. Defendant acknowledges that Dr. Sanders believed that Mr. Williams' problems were caused by the accident, but noted that Dr. Sanders was under the impression that Mr. Williams was asymptomatic prior to the accident. Dr. Sanders said his opinion would change if he became aware that Mr. Williams had prior hip issues. Dr. Brandner x-rayed Mr. Williams' hips and found

degenerative arthritis in both hips which was more pronounced in the right hip. Mr. Williams' claim that his marathon running shows that he never had hip pain before the accident is not conclusive because Mr. Williams has severe neck and spine problems prior to the accident which did not prevent him from marathon running. There is a dispute of fact about whether the injuries were caused by the accident. Accordingly, summary judgment on this issue is denied.

### B. Estoppel/Waiver

Plaintiffs' only remaining argument for summary judgment is that Defendant waived the right to deny coverage to Mr. Williams when it "remained silent with regards to the status of the UIM claim and/or whether or not they would or would not be paying for any additional medical care subsequent to the expiration of the medial payments benefits under the policy." (Opp. at 49.)

"'Equitable estoppel functions to prevent the assertion of legal rights that in equity and good conscience should not be available due to a party's conduct.'" In re Estate of Prestie, 122 Nev. 807, 138 P.3d 520, 525 (2006) (quoting In re Harrison Living Trust, 121 Nev. 217, 112 P.3d 1058, 1061–62 (2005)). Equitable estoppel requires that "(1) the party to be estopped must be apprised of the true facts, (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped." In re Harrison Living Trust, 112 P.3d at 1062; see also Pellegrini v. State, 117 Nev. 860, 34 P.3d 519, 531 (2001) (holding that equitable estoppel requires justifiable reliance by the party invoking the doctrine). Whether to apply equitable estoppel is within the Court's discretion. Id.

As discussed *supra*, Defendant was not aware that Plaintiffs planned to seek UIM benefits until October 29, 2008 and was not aware that Mr. Williams would claim that the accident caused a hip injury which necessitated a hip replacement surgery. There is nothing to indicate that Defendant acted in any way intended or reasonably expected to give Plaintiffs a belief that Defendant acknowledged the cause of the injury and would cover the hip replacement surgery under the UIM policy. There is no showing of detrimental reliance or a change in position by Mr. Williams.

1  Plaintiffs' arguments for waiver are substantively the same and do not merit summary judgment.

2  Defendant is not estopped from disputing liability. Accordingly, Plaintiffs' Countermotion for

3  Summary Judgment is denied.

4  <u>V. Conclusion</u>

5  **IT IS HEREBY ORDERED THAT** Defendant's Motion to Reconsider Order Granting *Pro*

6  *Hac Vice* (#75) is **GRANTED**.

7  **IT IS FURTHER ORDERED THAT** the Defendant's Motion for Summary Judgment

8  (#51) is **GRANTED**.

9  **IT IS FURTHER ORDERED THAT** Plaintiffs' Countermotion for Summary Judgment

10  (#71) is **DENIED**.

11  DATED this 2nd day of May 2012.

_____
Kent J. Dawson
United States District Judge